UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x
                                   :

KEVIN ALLER,                       :

              Petitioner,       :       11 Civ. 9089 (TPG)

                v.              :       **OPINION**

UNITED STATES OF AMERICA,    :

              Respondent.     :

                                     :
------------------------------------------x

Petitioner Kevin Aller ("petitioner") moves, through counsel, to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Petitioner claims that he was deprived of his right to effective assistance of counsel in violation of the Fourth and Sixth Amendments. He also claims that, in imposing sentence, the district court violated his Fifth Amendment due process rights and his Sixth Amendment right to a jury trial.

For the reasons that follow, the motion is denied.

### BACKGROUND

Petitioner was first indicted in 2000 for crimes allegedly committed as a member of a racketeering enterprise known as "Baby J's Crew." "Baby J's Crew" was headed by a man named Kevin McAllister. The enterprise distributed narcotics and committed many acts of violence.

The indictment was superseded several times. In May of 2003, petitioner was tried before a jury on six counts: (1) racketeering (18 U.S.C. §1962(c)); (2) conspiracy to commit

racketeering (18 U.S.C. §1962(d)); (3) conspiracy to distribute narcotics (21 U.S.C. §812, 841(a)

and (b)(1)(A)); (4) conspiracy to commit murder in aid of racketeering (18 U.S.C. §1959(a)(5));

(5) murder in aid of racketeering (18 U.S.C. §1959(a)(1) and (2)); and (6) murder while engaged

in drug trafficking (21 U.S.C. §848(e)(1)(A)).  On the murder-related counts, the Government

argued that petitioner was involved in the murder of two men—Joseph Coppedge and Kiron

Little—in connection with his membership in "Baby J's Crew."  Petitioner was tried alone, as his

original co-defendants did not proceed to trial, and a number of them cooperated against

petitioner at trial.

The jury convicted petitioner on three counts:  (1) RICO conspiracy, 18 U.S.C. § 1962(d)

(Count Two), (2) narcotics conspiracy, 21 U.S.C. § 846 (Count Three), and (3) conspiracy to

commit murder in aid of racketeering, 18 U.S.C. § 1959(a) (Count 4).  However, the jury

acquitted petitioner of Counts Five and Six, which alleged that he murdered Coppedge in

connection with other criminal activity.  The jury also failed to reach a verdict on the substantive

RICO charge (Count One).  Finally, the jury found petitioner responsible for distributing less

than five grams of crack, as opposed to the more than five kilograms alleged in the indictment.

On September 26, 2003, District Judge John Martin sentenced petitioner to an aggregate

prison term of 50 years.  Defense counsel had urged the court to impose concurrent sentences,

arguing that the "illegal conduct on which the RICO conspiracy was based encompassed both the

narcotics conspiracy and the murder conspiracy," and that petitioner merited a downward

departure under *United States v. Rahman*, 189 F.3d 88 (2d Cir. 1999).  (Pet. Br. at 23-27.)

However, Judge Martin refused to depart downward, and reached a 50 year term of

imprisonment by sentencing petitioner to consecutive, maximum terms of incarceration on each

count of conviction: 20 years for RICO conspiracy (Count Two), 20 years for a narcotics

conspiracy involving less than five grams of crack (Count Three), and 10 years for murder conspiracy (Count Four). In imposing sentence, Judge Martin stated: "The families of the murdered victims are entitled to feel that the life of their loved ones has been appropriately valued by the court, and to sentence the defendant at anything below the maximum under the guidelines would be to undervalue those lives that he has taken." (Pet. Br. at 26-27 (quoting 9/26/03 Transcript at 13).)

Petitioner appealed his conviction and sentence to the Court of Appeals for the Second Circuit. The Second Circuit rejected petitioner's claims of error, but ordered that the case be remanded to the district court pursuant to *United States v. Booker*, 543 U.S. 220 (2004) and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), for a determination as to whether petitioner should be re-sentenced. After Judge Martin retired, the case was reassigned to the undersigned.

This court proceeded with the *Crosby* remand by conducting a re-sentencing hearing. During the re-sentencing hearing, the court found that petitioner's Guidelines Offense Level was 43, which dictated a Guidelines sentence of life imprisonment. Because a life sentence could not be achieved on any individual count of conviction, the court noted that the imposition of a Guidelines sentence would require that the maximum sentences on the three counts of conviction run consecutively. (5/28/09 Tr. at 31.)

After reviewing the Section 3553 factors, including the nature of the offense, the court stated that it "was compelled to say that a guidelines' sentence here is consistent with the factors listed in Section 3553 and in no way inconsistent." (*Id.* at 31.) The court went on to describe one of the relevant offenses as the commission of murder, which was committed "in connection with the activities of a group or gang that was involved in the sale of narcotics." (*Id.* at 32.) The

3

court also mentioned petitioner's background of personal hardship, but ultimately discounted it as a mitigating factor, given that "it was a voluntary thing to get involved in this gang, this group." (*Id.*) The court also gave weight to the Government's claim that petitioner had engaged in post-conviction misconduct, noting that petitioner's behavior did "not give [the court] reassurance that deterrence of future criminal conduct will occur without a very substantial prison term." (*Id.* at 32.) The court ultimately imposed the same 50-year term of imprisonment that was previously imposed by Judge Martin: 20 years' imprisonment on Count Two, 20 years' imprisonment on Count Three, and 10 years' imprisonment on Count Four, with all sentences running consecutively. (*Id.* at 34.)

The court entered a judgment of conviction on May 28, 2009. Petitioner again appealed to the Second Circuit, through counsel, arguing that this court's sentence was substantively unreasonable, that this court failed to address the parsimony clause, and that petitioner's sentence was disproportionate to the sentences received by his co-defendants. Petitioner also filed a *pro se* brief to the Second Circuit, arguing that this court erred in calculating his base offense level. Petitioner argued that because he was acquitted on the substantive crime of murder, his offense level should not have been increased based on the fact that the conspiracy to commit murder in aid of racketeering actually resulted in the victim's death.

The Second Circuit affirmed this court's sentence. In so holding, the Second Circuit first stated that petitioner's sentence fell "comfortably within the range of permissible decisions," because a district court "is not obliged to account for disparities among co-defendants in imposing a sentence," and because petitioner was actually "not similarly situated to his co-defendants for various reasons—not the least of which is that appellant refused to cooperate with authorities and insisted on going to trial." *United States v. Aller*, 384 F. App'x 34, 36 (2d Cir.

4

2010) (internal citations and quotation marks omitted). The Second Circuit then rejected petitioner's argument that this court erred in calculating petitioner's offense level, stating that it "is well settled that in the post-*Booker* world, a sentencing judge retains the authority to find facts relevant to sentencing by a preponderance of the evidence, even those of acquitted conduct," and it was "therefore not improper for the court to rely on the fact that the conspiracy resulted in the death of a victim in calculating appellant's base offense level of 43." *Id.* (citing *United States v. Vaughn,* 430 F.3d 518, 525-27 (2d Cir. 2005)).

Petitioner then petitioned for writ of *certiorari* in the United States Supreme Court. The Supreme Court denied the writ on December 13, 2010. This petition followed.

## LEGAL STANDARDS

### A.  Legal Standard for § 2255 Petitions

Under the Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), a federal prisoner is entitled to habeas relief if "the sentence imposed was in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). Relief under Section 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (citation omitted). "Where the petitioner . . . failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes cause for the waiver and shows actual prejudice resulting from the alleged violation." *Reed v. Farley,* 512 U.S. 339, 354 (1994) (internal citation omitted).

5

The AEDPA provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b).  However, if it "plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009).

### B. Legal Standard for Ineffective Assistance of Counsel Claims

Petitioners may raise ineffective assistance of counsel claims on collateral review.  *U.S. v. Tarbell,* 728 F.3d 122 (2d Cir. 2013) ("[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance of counsel") (internal citation omitted).  To state a claim for ineffective assistance of counsel, petitioner must show (1) deficient performance that was objectively unreasonable, and (2) prejudice such that the reliability of the outcome is put into question.  *Strickland v. Washington,* 466 U.S. 668 (1984).  Courts are not required to address both *Strickland* elements if the petitioner "makes an insufficient showing in one." *Wynder v. Smith,* No. 09 Civ. 4541 (LAP) (JLC), 2011 WL 70556, at *13 (S.D.N.Y. Jan. 10, 2011).

On a § 2255 petition, a "defendant seeking a hearing on an ineffective assistance of counsel claim need establish only that he has a plausible claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim." *Raysor v. U.S.,* 647 F.3d 491, 494 (2d Cir. 2011) (citing *Puglisi*, 586 F.3d at 213) (internal quotation marks omitted).  The court must determine "whether, viewing the evidentiary proffers, where credible, and record in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish

6

at a hearing a *prima facie* case for relief. If material facts are in dispute, a hearing should usually be held, and relevant findings of facts made." *Puglisi,* 586 U.S. at 213. However, the court "need not assume the credibility of the factual assertions." *Id.* at 214. "The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Lindstadt v. Keane,* 239 F.3d 191, 199 (2d Cir. 2001).

## DISCUSSION

Petitioner challenges his conviction and sentence on five grounds.

*First*, he argues that appellate counsel violated his Sixth Amendment right to effective assistance by failing to present a significant issue that had a stronger possibility of success on appeal than those issues that appellate counsel chose to pursue. Specifically, petitioner claims that appellate counsel should have focused on an alleged error by the court at the re-sentencing hearing in assuming that a guidelines sentence was "presumptively reasonable."

*Second*, petitioner argues that trial counsel provided ineffective assistance by failing to investigate allegations of misconduct while petitioner was in prison, which were considered on the record by the court at the re-sentencing hearing. Petitioner similarly claims that trial counsel was ineffective for failing to investigate a potential alibi and to call a potential alibi witness.

*Third*, petitioner argues that trial counsel provided ineffective assistance by failing to seek a jury charge that the motive element for conspiracy to commit murder in aid of racketeering must be found unanimously.

*Fourth*, petitioner argues that trial counsel provided ineffective assistance by failing to seek a jury charge that, that in considering the RICO conspiracy charge, the jury had to unanimously agree on which *type* of predicate act petitioner agreed to conspire to commit.

*Finally*, petitioner claims that, in calculating his offense level, the district court should not have relied on the fact that the conspiracy to commit murder in aid of racketeering, of which petitioner was convicted, actually resulted in the death of a victim—as the jury acquitted petitioner on the murder counts.

All of petitioner's arguments are without merit. The court addresses each in turn.

### 1. Ineffective Assistance of Appellate Counsel

Defendants are entitled to competent counsel at all critical stages of the proceeding. A defendant's right to the effective assistance of counsel and the analytical framework set forth in *Strickland* are thus equally applicable to counsel's performance on appeal. *Clark v. Stinson,* 214 F.3d 315, 321 (2d Cir. 2000). While appellate counsel's failure to raise certain claims on direct appeal may constitute ineffective assistance, it is not necessarily so. *See Murray v. Carrier,* 477 U.S. 478, 486–87 (1986); *Dretke v. Haley,* 541 U.S. 386, 393–93 (2004). In fact, typically an attorney has not provided ineffective assistance for failing to raise a claim, even if the claim at issue could have been successful on appeal. *See Acosta v. Griffin*, No. 11 CIV. 8724 (LGS) (RLE), 2013 WL 5512768, at *8 (S.D.N.Y. Oct. 3, 2013); *see also Clark,* 214 F.3d at 322 ("[C]ounsel does not have a duty to advance every nonfrivolous argument that could be made."). Appellate counsel will often "winnow out weaker arguments on appeal and focus on one central issue if possible, or at most on a few key issues." *Id.*

Here, petitioner argues that appellate counsel failed to provide effective assistance by failing to pursue a particular argument on appeal following the *Crosby* remand. On appeal, appellate counsel focused on the "parsimony clause" of 18 U.S.C. 3553(a), and on the purported disproportionality of petitioner's sentence as compared to his original co-defendants. Petitioner claims that this argument had almost no chance of success on appeal because, among other

reasons, petitioner's co-defendants had cooperated with the Government, while petitioner had not.  By contrast, petitioner claims that appellate counsel *should* have focused on a different alleged error committed by the district court at re-sentencing:  an assumption that a guidelines sentence was "presumptively reasonable."  Petitioner claims that the district court committed such an error by emphasizing certain statements made on the record by the court at the re-sentencing:  specifically, that the court "had to have reasons" for imposing a non-Guidelines sentence, and that the court "was compelled to say that a guidelines sentence is consistent with the factors in Section 3553 and in no way inconsistent."  (5/28/09 Tr. at 31.)  According to petitioner, by presenting an obviously losing argument based on the "parsimony clause"—rather than a potentially winning one based on the court's alleged assumption that the Guidelines were "presumptively reasonable"—appellate counsel failed to provide effective assistance.  *See United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (stating that a "district court commits procedural error where it fails to calculate the Guidelines range . . . makes a mistake in its Guidelines calculation, or *treats the Guidelines as mandatory*") (emphasis added).

Petitioner's argument is based on a misrepresentation of the record at the re-sentencing hearing.  At the re-sentencing, the court did determine that the Guidelines called for life imprisonment.  (5/28/09 Tr. at 30-31.)  But the court explicitly noted that the Guidelines were advisory and not binding.  (*Id.* at 31.)  The court then proceeded to independently consider the relevant factors under 18 U.S.C. § 3553, including what it considered the "primary factor . . . the nature and circumstances of the offense," which included petitioner's involvement in a combination of narcotics distribution and the commission of murder.

The statement by the court that it "had to have reasons" for imposing a non-Guidelines sentence referenced only the fact that a district court is required to state a reason for a downward

9

departure, which petitioner had requested—*not* that the court assumed that a Guidelines sentence was "presumptively reasonable." And, the statement by the court that it "was compelled to say that a guidelines sentence is consistent with the factors in Section 3553 and in no way inconsistent" came after the court independently considered the relevant factors under Section 3553, and after the court stated that the Guidelines were non-binding.

The record from the re-sentencing hearing indicates that the court imposed a 50-year sentence not because it considered a Guidelines sentence to be "presumptively reasonable," but because the nature and circumstances of the offenses, as well as the other Section 3553 factors, merited such a sentence. Appellate counsel was not ineffective for failing to make an argument on appeal based on a misrepresentation of the record at the re-sentencing.

### 2. Ineffective Assistance of Trial Counsel in Violation of Fourth Amendment

#### a. Failure to Investigate The Government's Allegations of Post-Imprisonment Misconduct

At the re-sentencing hearing, the government pointed to eight instances of post-conviction misconduct involving petitioner, which it argued warranted a conclusion that petitioner had not reformed. Among other instances of misconduct, the government noted that petitioner had been found to possess a shank knife in prison. Petitioner now claims, in briefing on the instant petition, that this knife was owned for self-defense.

Petitioner argues that trial counsel provided ineffective assistance by failing to conduct an adequate investigation into these allegations of misconduct. He states in an affidavit that trial counsel did not discuss these incidents with him in detail, and therefore was not in a position to evaluate whether certain information should be made known to the sentencing court. (Dkt. No. 1-A, Aller Aff. at ¶ 13.) Petitioner seeks a hearing to investigate whether trial counsel's failure to

rebut allegations of misconduct was a deliberate strategy or, alternately, ineffective assistance. The Government counters that petitioner's trial counsel made a conscious choice not to attempt to disprove the allegations of misconduct, arguing instead to the court that "Aller had already been punished and held accountable for [the misconduct] conduct and should not be further punished for it." (Dkt. No. 9, Govt. Op. at 56.)

Though defense counsel does have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," *Strickland,* 466 U.S. at 691, the law does not "compel defense counsel to investigate comprehensively every lead or possible defense ... or 'to scour the globe on the off-chance something will turn up.'" *Greiner v. Wells,* 417 F.3d 305, 321 (2d Cir. 2005) (quoting *Rompilla v. Beard,* 545 U.S. 374, 383 (2005)). Where there is "reason to believe investigations would be fruitless or even harmful," the failure to conduct the investigation may not be challenged as unreasonable. *Id.*

Here, trial counsel was not ineffective for any supposed failure to investigate the allegations of petitioner's misconduct. The record from the re-sentencing indicates that trial counsel and petitioner *both* engaged in a reasonable strategy of admitting to the alleged misconduct, but then attempting to mitigate it by arguing to the court that petitioner had already been punished in prison for the misconduct at issue. Trial counsel clearly stated:

> I'm not saying there is not truth to many things that have occurred in prison. Some difficult things have happened. But I will say [the allegations of misconduct] are overstated in the sense that he's gotten disciplinary conduct and actions taken against him at jail. He's paid the price for those. He's lost privileges. He's been in segregation. All that has been accounted for. He has never been charged with a crime. And I don't think any of those instances justify any change to the sentence that should be imposed.

(5/28/09 Tr. at 18-19.) Petitioner similarly admitted to certain acts of violence and misconduct, apologized for them, and then tried to minimize their significance by referring to them as "little

fights" and blaming them on conditions inside the prison system. (*Id.* at 20.) Given petitioner's own admissions to the misconduct in question at the re-sentencing hearing, and given trial counsel's sensible strategy of seeking to mitigate the effects of such misconduct on petitioner's sentence rather than denying it outright, the court rejects petitioner's argument that trial counsel unreasonably failed to investigate.

### b.  Failure to Call An Alibi Witness

Petitioner similarly contends that his right to effective assistance was denied because trial counsel failed to investigate a potential alibi or call petitioner's brother, Adrian Bethea, as an alibi witness.  Petitioner claims that he resided with Bethea for "a substantial portion" of December 1996, which was the month of the Joseph Coppedge murder in the Bronx.  Petitioner claims that trial counsel failed to interview his potential alibi witness, let alone call him at trial.

"The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial."  *United States v. Smith,* 198 F.3d 377, 386 (2d Cir. 1999) (citation omitted); *see also United States v. Eyman,* 313 F.3d 741, 743 (2d Cir. 2002) ("A failure to call a witness for tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel."). Thus, an attorney's decision "whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation." *United States v. Best,* 219 F.3d 192, 201 (2d Cir. 2000); *see also Gersten v. Senkowski,* 426 F.3d 588, 609 (2d Cir. 2005) (The reasonableness of such a tactical decision is judged "in terms of the adequacy of the investigations supporting it") (internal citation omitted).  "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and even strategic choices made after less than complete investigation do not

12

amount to ineffective assistance—so long as the known facts made it reasonable to believe that further investigation was unnecessary." *Henry v. Poole,* 409 F.3d 48, 63 (2d Cir. 2005) (citing *Strickland,* 466 U.S. at 690–91).

Petitioner has submitted an affidavit stating that, before trial, he informed trial counsel that he was "in Newburgh, New York, and not in the Bronx for a substantial portion of December, 1996," that he was "staying with my half-brother Adrian Bethea," and "that while [he] was in the Newburgh area in December of 1996, [he] also was spending time with [his] then-girlfriend." (Dkt. No. 12 at ¶¶ 5-7; *see also* Dkt. No. 1-A at ¶¶ 4-6.) Crucially, petitioner's affidavit does *not* include his specific location on December 29, 1996 or December 30, 1996— the nights significant for purposes of his murder conspiracy conviction, during which multiple witnesses placed him at a murder scene.

The affidavit submitted by Bethea similarly fails to provide an alibi for petitioner on the dates in question. Bethea states: "While I does not recall the dates, I remember that [Aller] was in Newburgh staying with me on various occasions around Christmas and New Years in 1996." (Dkt. No. 13 at ¶ 8.) Bethea claims that he would have testified only that petitioner "visit[ed] him frequently in Newburgh" in December 1996. (Dkt. No. 15, Aller Rep. Br. at 6.) Similarly, the affidavit submitted from petitioner's mother, Yvette Olivieri, merely states that she "went to the Newburgh area on a few occasions to see [Aller]," and that "at least two of these visits took place in December of 1996," but that she does not "remember the exact dates." (Dkt. No. 14 at ¶ 5.) Olivieri claims that she would have testified only that she "went to visit [petitioner] in Newburgh two or three times in December of 1996." (Aller Rep. Br. at 6.)

These affidavits are not sufficient to support a plausible claim for ineffective assistance. Petitioner has not set forth credible evidence that trial counsel was aware of, and failed to call, an

13

actual alibi witness. And even if he had done so, petitioner's presence at the murder scene in New York was established at trial by three other witnesses—negating the prejudice involved by counsel's failure to call a supposed alibi witness. On this record, the court declines to hold that trial counsel's strategic decision to call or not to call a particular witness—none of whom could have actually provided exculpatory evidence inconsistent with the Government's proof at trial— violated petitioner's right to effective assistance.

### 3. Ineffective Assistance of Trial Counsel in Violation of Sixth Amendment For Failing to Seek a Unanimity Instruction Regarding Motive

No party objected to Judge Martin's jury charge at the time of trial concerning motive, which stated in relevant part:

> [T]he last element I will instruct you on is one which requires the government to prove that Kevin Aller acted for the purpose of gaining entrance to or maintaining or increasing his position in that enterprise, or for the purpose of receiving something of value from the enterprise. To establish that Kevin Aller committed the crime alleged for the purpose of gaining entrance to or maintaining or increasing his position in the enterprise, the government must prove that Kevin Aller's general purpose for committing the crime in question was to [] gain entrance to, increase or maintain his position in the enterprise. It is not necessary that Kevin Aller be a formal member of the enterprise. The motive requirement is satisfied if the defendant committed the crime you are considering because it would allow him to gain entrance to the enterprise, because he knew it was expected of him by reason of his association with the enterprise or because he would enhance his position or prestige with the enterprise. These examples are by way of illustration and are not exhaustive.

(Trial Tr. 893-94.) Petitioner now argues that trial counsel failed to provide effective assistance by neglecting to seek a jury charge requiring that the jury unanimously find the motive element for conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. § 1959 (the Violent Crimes in Aid of Racketeering ("VCAR") statute).

This argument is unavailing. Citing to a number of cases decided before *United States v. McAllister*, 112 Fed. App'x 771, 773 (2d Cir. 2004), petitioner claims that "the Second Circuit

14

explicitly listed motive as one of the elements the government has to prove in a prosecution under 18 U.S.C. § 1959." (Aller Rep. Br. at 8 (citing *United States v. Concepcion*. 983 F.2d 369, 381 (1992); *United States v. Bruno*. 383 F.3d 65, 85-86 (2d Cir. 2004); *United States v. Thai*, 29 F.3d 785, 818-19 (2d Cir. 1994)).) But in *McAllister*, a case involving the head of petitioner's gang (among other co-defendants), the Second Circuit found that because "no authority of this or any other court that supports the proposition that the multiple motivations listed in 18 U.S.C. § 1959(a) represent elements of separate crimes," a unanimity charge is not required regarding motive. *See United States v. McAllister*, 112 Fed. App'x 771, 773 (2d Cir. 2004). As there was no clear precedent in this Circuit requiring a unanimity charge regarding the motive element at the time of trial, trial counsel did not provide ineffective assistance by failing to ask for such a charge.

Petitioner admits that he "does not assert that the evidence was insufficient with respect to any of the possible VCAR motives," but instead "argues that because the government presented evidence that could have supported any one of the four prohibited motives it is impossible to tell whether the jury unanimously agreed on a specific motive." (Aller Rep. Br. at 9-10.) But this argument is foreclosed by *Griffin v. United States*, 502 U.S. 46, 56-57 (1992). In *Griffin*, the Supreme Court held that when a jury returns a general verdict of guilty in a multi-object conspiracy prosecution, the verdict stands if there was sufficient evidence with respect to any of the charged objects. That is precisely what happened here when the jury unanimously convicted petitioner on Count Four. Based on the record before the court, there was sufficient evidence for the jury to infer a qualifying motive under Section 1959. The fact that sufficient evidence was available to support such a finding, and that the jury unanimously convicted petitioner of Count Four, is enough to sustain the conviction.

15

4. **Ineffective Assistance of Trial Counsel in Violation of Sixth Amendment For Failing to Seek a Unanimity Charge Regarding the Type of Predicate Act Underlying the RICO Conspiracy Conviction**

Petitioner argues that trial counsel violated his right to effective assistance by failing to ask for a jury charge that, in considering the RICO conspiracy count, the jury had to unanimously agree on at least two qualifying predicate acts petitioner conspired to commit.

To be convicted of RICO conspiracy under Section 1962(d), a defendant "need not himself have committed or agreed to commit the two or more predicate acts, such as bribery, requisite for a substantive RICO offense under § 1962(c)." *Salinas v. United States*, 522 U.S. 52, 53 (1997). Rather, "Section 1962(d)—which forbids 'any person to conspire to violate' § 1962(c)—is even more comprehensive than the general conspiracy provision applicable to federal crimes, § 371, since it contains no requirement of an overt or specific act to effect the conspiracy's object." *Id.* Thus, to be convicted of RICO conspiracy, "it suffices that [a defendant] adopt the goal of furthering or facilitating the criminal endeavor, and he need not agree to undertake all of the acts necessary for the crime's completion." *Id.* A defendant must also "know the general nature of the conspiracy and know that the conspiracy extends beyond his individual role." *United States v. Rastelli*, 870 F.2d 822, 828 (2d Cir. 1989).

Here, in instructing the jury on the RICO and RICO conspiracy charges, Judge Martin stated:

> I will explain to you the conspiracy charge in Count 2 first, because an understanding of conspiracy is necessary for an understanding of the conspiracy to murder allegations contained in Count 1. However, in discussing the conspiracy charge in Count 2, I will make reference to certain concepts; for example, "a pattern of racketeering," which will be defined later in the instructions as to Count 1. Remember that you are to consider the instructions as a whole and the terms defined in the discussions of Count 2 have the same meaning when used with respect to Count 1.

16

(Trial Tr. at 865-66).  Judge Martin next summarized how a RICO conspiracy charge typically differs from a substantive RICO charge.  He then went on to give a specific RICO conspiracy instruction:

> Count 2, the RICO conspiracy charge, and Count 1, the RICO substantive charge, involve many of the same terms[:] [t]he same definition of enterprise and pattern of racketeering activity; [the] defendant's employment by or with the enterprise and the effect of interstate or foreign commerce are exactly the same for Counts 1 and 2 . . . . There's one major difference between Count 1 and Count 2.  Under the substantive count, Count 1, as we will discuss, you cannot convict the defendant unless you find that he actually committed two of the specified acts of racketeering. By contrast, under the conspiracy count, Count 2, the defendant need only conspire or agree to participate in the conduct of the affairs of the enterprise through a pattern of racketeering activities, by agreeing to commit at least two racketeering acts. Under the conspiracy, it is not necessary for the defendant to actually succeed in carrying out the specified racketeering acts.

(*Id.* at 867-68).

Next, Judge Martin stated that to prove the RICO conspiracy charge alleged in Count Two, the Government needed to establish (1) the existence of the RICO enterprise; (2) petitioner's association with or employment by the enterprise; and (3) that the defendant "unlawfully, willfully and knowingly conspired with at least one other person to participate in the conduct of the affairs of that enterprise through a pattern of racketeering activity by agreeing to commit at least two acts of racketeering[.]" (*Id.* at 868-69.) Judge Martin then elaborated on the third element, stating:

> [T]he third element which you must find beyond a reasonable doubt in order to convict on Count 2 is that the defendant unlawfully, willfully and knowingly entered into an agreement with at least one other person to participate in the conduct of the enterprise's affairs through a pattern of racketeering activity, a term I will define shortly. . . . The important difference between Count 2 (the RICO conspiracy) and Count 1, the substantive RICO count, as I mentioned before, is that here the government is required to prove that the defendant only agreed with at least one other person to participate in the conduct of the enterprise's affairs through a pattern of racketeering activity, including at least two of the specified acts.

17

(*Id.* at 871.)   Judge Martin similarly stated to the jury that "[w]hat is necessary is that the defendant participate with knowledge of at least some of the unlawful purposes of the conspiracy and with an intent to aid the accomplishment of its unlawful purposes, and with the intent to commit at least two racketeering acts as charged in the indictment." (*Id.* at 875.)

Soon thereafter, in charging the jury on the substantive RICO charge, Judge Martin also articulated the proof necessary to establish "a pattern of racketeering activity" for purposes of the RICO conspiracy charge. He told the jury that it "must be unanimous as to which racketeering acts have been proven beyond a reasonable doubt," (*Id.* at 881), and that "[e]ach racketeering act is separate, and in your deliberations you must reach a unanimous verdict with regard to each racketeering act." (*Id.* at 884.)

After the jury returned a verdict of guilty on the RICO conspiracy charge, trial counsel asked Judge Martin to direct the jury back to the jury room, and to provide a note identifying the specific predicate acts that it had relied upon in finding petitioner guilty of RICO conspiracy. (*Id.* at 952.)   Judge Martin denied this request, stating that he did not believe that the jury needed to agree unanimously on at least two specific predicate acts to convict petitioner of RICO conspiracy.   (*Id.* at 954.)   He also concluded that, whether or not such a unanimity charge requiring the jury to identify specific predicate acts should have been given initially, it was too late to do so after the verdict had already been returned.   (*Id.* at 954.)   Petitioner now challenges trial counsel's failure to seek such a unanimity charge regarding the relevant predicate acts in the first instance.

Petitioner cannot establish ineffective assistance on this ground.   Petitioner and the Government argue in their papers as to whether such a jury charge is required for a RICO

conspiracy conviction under *current* Second Circuit caselaw. *Cf.* Govt. Op. at 87 (claiming that *United States v. Applins*, 637 F.3d 59 (2d Cir. 2011), held that a jury need not find unanimously which specific racketeering acts defendants agreed to commit in order to find them guilty of RICO conspiracy, and thus resolves this issue against petitioner) and Aller Rep. Br. at 10-11 (claiming that even under *Applins*, Judge Martin would have been required to charge the jury that it had to agree unanimously on the *type* of predicate acts which Aller had committed). But whether or not *Applins* might now require such a charge is immaterial for purposes of establishing ineffective assistance *at the time of trial*.

Citing to *Salinas*, 522 U.S. 52 (1997), petitioner argues that, even at the time of trial, the law was clear that a unanimity instruction was required regarding the relevant predicate acts. But petitioner misreads the case. In fact, the *Salinas* court held that "the interplay between subsections (c) and (d) [of Section 1962] does not permit us to excuse from the reach of the conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense." *Id.* at 63. If, under *Salinas*, a defendant could be convicted of RICO conspiracy even without agreeing to commit the required two or more predicate acts, then surely a unanimity charge regarding such predicate acts was not required.

Contrary to what petitioner now claims, at the time of trial, the case law within this Circuit was unsettled regarding whether the type of unanimity instruction now sought by petitioner was in fact required for a RICO conspiracy charge. Indeed, in *McAllister*, the Second Circuit addressed this same argument head-on, writing: "In light of the unsettled state of the law on this issue, neither side having pointed us to any case holding that the trial court is or is not required to give such an instruction, the charge given to the jury was not plainly erroneous." *McAllister*, 112 F. App'x 771, 773 (2d Cir. 2004). Without a clear precedent indicating that a

19

charge like the one petitioner now claims should have been sought was in fact required at the time, trial counsel did not perform unreasonably by failing to request one. *See, e.g., United States* v. *Whab*, 355 F.3d 155, 158 (2d Cir. 2004) ("For an error to be plain, it must, at a minimum, be clear under current law. We typically will not find such error where the operative legal question is unsettled, including where there is no binding precedent from the Supreme Court or this Court.").

Additionally, even if such an instruction might have been proper at the time of trial, petitioner cannot demonstrate prejudice by trial counsel's failure to request it. The fact remains that petitioner was convicted unanimously of narcotics conspiracy (Count Three)—which was also alleged as a Racketeering Act—and conspiracy to commit murder in aid of racketeering (Count Four)—which necessarily included a finding that petitioner conspired to commit murder. The acts required to convict on these two counts qualify as predicate acts for purposes of RICO conspiracy, and the jury's unanimous verdict of conviction on these two counts shows its agreement that petitioner committed, at minimum, the two predicate acts required for a RICO conspiracy conviction under Count Two. *See United States v. Salmonese,* 352 F.3d 608, 624 (2d Cir. 2003) (affirming conviction for multi-object conspiracy, where, despite general verdict, evidence established each alleged objective). Thus whether or not such a unanimity charge regarding specific predicate acts was required under the case law at the time of trial, petitioner was not prejudiced by trial counsel's failure to seek such a charge.

### 5. Claims that the District Court's Sentence Violated Petitioner's Fifth Amendment Due Process Rights and Sixth Amendment Right to Jury Trial

Finally, petitioner claims that Judge Martin should not have relied on the fact that the conspiracy to commit murder in aid of racketeering, of which petitioner was convicted, actually

resulted in the death of a victim. Petitioner argues that by including conduct for which the jury had acquitted him in the calculation of petitioner's offense level—namely, the deaths of Coppedge and Little—the district court violated his Fifth Amendment right to due process of law and Sixth Amendment right to a jury trial.

As an initial matter, the court need not reach the merits of this argument. It is well settled that a habeas proceeding cannot be used to re-litigate issues or correct alleged errors which were, or could have been, raised on the appeal from the conviction. *Reed,* 512 U.S. at 354; *United States v. Pitcher,* 559 F.3d 120, 123 (2d Cir. 2009); *United States v. Sanin,* 252 F.3d 79, 83 (2d Cir. 2001). Petitioner has already raised this argument in a direct appeal, and it was squarely rejected by the Second Circuit. Petitioner is thus precluded from re-litigating this issue in a collateral attack.

Additionally, this argument fails on the merits, for the reasons already expressed by the Second Circuit. As noted above, the Second Circuit previously held that "this argument is unavailing," as "in the post-*Booker* world, a sentencing judge retains the authority to find facts relevant to sentencing by a preponderance of the evidence, even those of acquitted conduct." *Aller*, 384 F. App'x at 36 (citing *United States v. Vaughn,* 430 F.3d 518, 525-27 (2d Cir. 2005)). The Second Circuit concluded: "It was therefore not improper for the court to rely on the fact that the conspiracy resulted in the death of a victim in calculating appellant's base offense level of 43." *Id.* To the extent petitioner's argument based on the Fifth and Sixth Amendment here is not procedurally precluded, the court sees no reason to depart on the merits from a clear holding in this case by the appellate court.

21

## CONCLUSION

The court has reviewed the parties' submissions and the underlying record, and has carefully considered petitioner's arguments. For the reasons discussed above, the petition is denied.

The court will, however, issue a certificate of appealibility with respect to two limited issues: (1) whether trial counsel was constitutionally ineffective because he failed to ask the district court to instruct the jury that in order to find petitioner guilty under 18 U.S.C. § 1959, it needed to agree unanimously on which specific motive petitioner possessed when he committed the underlying offense; and (2) whether trial counsel was constitutionally ineffective because he failed to seek an instruction that, in considering the RICO conspiracy charge, the jury had to unanimously agree on which predicate acts petitioner agreed to conspire to commit.

For all other issues raised by petitioner, the court declines to issue a certificate of appealability, as there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see United States v. Perez,* 129 F.3d 255, 260 (2d Cir. 1997).

This decision resolves the motion listed at docket item 1.


SO ORDERED.

Dated:   New York, New York
         April 30, 2015

Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/30/15

22